Good morning. May it please the court, my name is Thomas Cronin and I represent the defendant, counter plaintiff and appellant Joseph Sullivan Jr. in this action. Your Honor, this case arises on the trial court's decision to grant summary judgment in favor of the plaintiffs and deny cross motions for summary judgment. The case essentially rises and falls, we submit, on the language of the trust agreement. We respectfully submit that the trial court erred in the reading of the plain language of the relevant trust agreement. And I think it's worth paying attention to a few of the key sentences really that give rise to this because there's a fundamental difference. The fact that this case arose on cross motion suggests that both sides read the same language and interpreted it diametrically opposed. Mr. Cronin, I mean, we've seen the language. Let's ask this question to start the ball rolling. Do you agree the record clearly reflects the sister disapproved the payment that issued to the brother? No, Your Honor. I think that there's two responses. Other than the email which is a statement. There's two responses. I appreciate the question. I understand it. The way I'm going with this before you start answering is, if that's the case, then why do we need to decide what the trust says because she has disapproved it? Two reasons, Your Honor. The first one is the language is critical because the language itself, the trust document we submit, first of all, permits compensation, does not forbid it. The statute that we've cited, the trust asserts that it orders compensation. It's a mandatory shell pay. We've submitted evidence that the counsel for the trust has interpreted the contract that is available. We also have submitted evidence that the co-trustee, Ms. Schroeder, approved previous payments, never said there was anything wrong with payments. And we've attached that as we've discussed it. That's your course of conduct, I think. Well, it's more than that. We don't even really have to get to course of conduct. We don't even have to really get there. If you look at the plain language of the statute, let me give you this example. But doesn't she, under the terms of the trust, does she not have the authority to simply say, I'm going to approve payment A, but I will not approve payment B? Because what the set law seems to have done was to build in an anti-conflict provision that says, if you're a trustee and you want to get any money out of this, the other trustee has to approve it. Yes, Your Honor, I do agree that there is a two-trustee requirement. However, the language of the trust, if it's correct as we see it, permits trustee compensation. And the statute says there, it really is, it would be a breach of trust not to approve it. She can oppose what is reasonable compensation.  Let's say the trustee was taking an act otherwise contemplated, to pay taxes or something, that otherwise was contemplated. If the trustee went ahead and paid the taxes over somebody's objection, the failure to approve something like that would be the breach of trust. In other words, the fact that the... Isn't the trustee's duty to preserve the trust assets? Of course it is. And your question, and that question too, also underscores one of my central themes from the trial court to today, is that if there is ambiguity in what the settler intended, okay? If there is ambiguity, then some of the judgment should not have been granted. And we should have a trial, let everybody testify about what the settler... Because if the purpose of the review is to effectuate the settler's intent, which I think was your question, Your Honor, then I think it's not at all fair, because I have induced competent record evidence that suggests the trust document permits payment. A statute says you shall get a payment. The counsel said that's what the settler said the trust means. And we have previous conduct from the trustee. And let me just make this point too. Because there was an argument in Mr. Fett's brief about the other trustee versus the other parties. All parties participated in the course of conduct with the... Because Ms. Schroeder, the co-trustee, never said there was anything wrong. In fact, she said, Joe, it's right that you deserve payment. She said this two years before on a previous issue. Never said the document forbids it. Counsel, didn't she receive fees as well? She did receive fees as well. But in this instance, she chose not to. Her email, I think, is very instructive. It's at page 257 of our record. She says, I do not, she's talking to herself, I do not feel it's right for me to take it this time. But I think, Joe, it would be wrong for you not to do so. So is this more of a question of the reasonableness of his fees versus whether he can take them or not? Well, certainly that's... Back to Justin DeLort's question was that certainly a trustee could object to something reasonable about the reasonable compensation fee. We induced evidence about how reasonable Mr. Sullivan's fee was. We submitted expert testimony, etc., expert opinion. The trial court actually made an explicit finding that she found the trustee's fees to be quite reasonable. It was her finding that the trust agreement prohibited fees to an individual trustee. All right, let's look at paragraph G, counsel. Thank you. Trustee shall be reversed for all reasonable expenses incurred in the management and protection of the trust. Reasonable expenses. Certainly. That can include a myriad of things, could it not? Certainly, it's not defined anywhere as not including fees. Everybody assumed expenses meant, you know, disbursements of some kind. And I don't think we have to... Your question, I think, underscores ambiguity. But what I'm saying is, didn't the trial court make a distinction between fees, attorney fees, and expenses? Certainly did. And does that put the document? Doesn't say that either. And if we go further, here's what the trial court and Mr. Fell, my colleague, focused on. They focused on one word in the entire trust agreement, and it's the second clause of that sentence, which says, and any corporate trustee shall receive compensation for its services in accordance with its schedule of fees in effect from time to time. The trial court looked at that language and said, well, since it's talking about corporate trustee, it must mean only corporate trustees get fees and not individual. The agreement never says that. And, of course, it completely ignores the next sentence, which says, a trustee's regular compensation shall be charged, et cetera, et cetera. Doesn't use the limiting word corporate there. Counsel, isn't it reasonable to glean from that that how attorneys get their fees is by the hour, by the rate? Banks oftentimes charge a percentage, do they not? Of course. Isn't that what this refers to? That's exactly what it refers to. As our expert, a test offered evidence to suggest that the rates that would have been charged by a corporate trustee would have been far greater than what Mr. Sullivan accepted here. So the premise, the instruction now is to get to our best argument first. This is it. The premise, the finding, the holding by the trial court that this trust agreement explicitly prohibits trustees from taking fees is we submit error. And everything flows from that. Because if a trust document permits fees, and, again, that was a statute in Illinois that says a trustee shall get fees if not inconsistent. It's not inconsistent. So then we say, what about the two-trustee requirement? We have two responses to that. One, it really doesn't matter because when you have a mandatory right to get fees, the two-trustee requirement really should be deemed a reasonableness test. But if the two co-trustees disagree as to what is reasonable, the original, the settlor decided there would be Mr. Diamond to be the tiebreaker, and he's no longer with us. Correct. So my question is, where do we go with the remedy here? The remedy, you want to say the judge is going to decide what's reasonable? And do we have actually a claim floating around in the pleadings to do that? Or should the court exercise its equitable powers and appoint a new tiebreaker? Let's say we give you your main issue. Let's say we agree he's not barred from getting fees because he's supposed to do it pro bono. And the sister says, no, I don't want to give a dime to this brother. Where do we go from there? Two things, Your Honor. One was we submitted evidence in our motion for summary judgment on both the quantum merit count and directly under the language of the document that these fees were reasonable. The trial court made the findings that were reasonable, so the trial court did just what you may have suggested in one of your things, to find what are reasonable fees and to award them. Another way to do it would be to underscore the fact that this is ambiguous. Summary judgment was not appropriate here, and we need to have a trial on the merits. What is a reasonable fee? What fees did Mr. Sullivan accept? For what work did he do? And to have that case. In opposition to summary judgment, did the sister submit anything tending to prove or demonstrate that the fees were not reasonable, or was that left unopposed? No, they objected to the fact that the value of the services. Was it simply a naked objection, or was it backed up by anybody? We took depositions, and there's a definition of testimony. I'm sure Mr. Faulkner has sent to a definition of testimony, where he submits that the work that was done was not valuable. And that was one of the things that the trial court explicitly found. And frankly, that hasn't been appealed by Mr. Feld or by ourselves. So that finding we submit is meaningful. Mr. Croman, you need to wrap up. Thank you, Your Honor. I will reserve whatever time I have. Can I ask one more question? As far as these cases are concerned, isn't it always that we look to the intent of the settlor? Now, what evidence we have of the intent of the settlor is from the settlor's lawyer. Is that right? We thought that was very powerful evidence, Your Honor. The settlor's lawyer, and who wrote the trust agreement, and who then became the counsel for the trust, testified. And we've discussed her testimony. We've attached the definition transcript at length. It's undisputed that she felt that the trust called for fees to be paid to a trustee. Recommend it. She's the one who came up with the number. Thank you, counsel. Thank you for your time, Your Honor. Thank you. Morning, Your Honors. May it please the Court, I am Jeffrey Klotz, and I represent the plaintiff at Belize, Amy Schroeder, Kathleen Sullivan, Judith Sullivan, Mary Therese Sullivan, and the late John G. Sullivan. First of all, Justice Cotter's one major misconception, Amy Schroeder never took a trustee's fee in this case. There is nothing in this record that says anybody but Joseph Sullivan took a trustee's fee in this case. She did not. She was reimbursed for expenses. Absolutely. But she never took the compensation that was to be reserved for a corporate trustee. And, Justice DeWart, the question you initially asked Mr. Cronin, is there any question of fact whether or not Amy disapproved of these fees? And the answer is no. If you take a look at Judge Mikkel's ruling, she stated, I don't think you can get around the language that this expenditure required the approval of both trustees. And then she says, and I think the record is completely clear that approval runs not here. She said it again in the beginning of the argument, or she said, how do you get around the requirement that both trustees approve and that Amy did not approve? And, Mr. Cotter, let me ask you what I asked Mr. Cronin. Well, let's say, hypothetically, we were to agree with him that the trust does not require the siblings to act pro bono. All right? We then move to the disapproval by the sister standing there. Yep. Where do we go from there? Honestly, Judge. Is it that everybody gets zero and walks away, or is there an equitable tiebreaker that pops in? I don't think there's an equitable tiebreaker that this court can make. However, I can tell you we tried to resolve this matter with another lawsuit, and Mr. Cronin mentioned it in his reply. Is it the Judge Mitchell's lawsuit? Yeah. It was the first lawsuit. Exactly. We wanted to get this done quickly. We wanted a court to appoint another arbitrator because the drafter of this document didn't put in a successor tiebreaker. And Judge Mitchell goes, I can't do that. And he dismissed the case. Okay. So we are under the next stop was to Judge Mitva and file the incident lawsuit and say, listen, he's got to get this money back. And then we can have a hearing. And was there evidence in the record as to whether or not his claim for quantum merit is supported? Is there a benefit to the trust? I cited it in the brief, and I can tell you this is all about the Clark & Barlow hardware store that's just north of the river. The business of Clark & Barlow was given to Joseph Sullivan and his brother John. John's no longer with us. The real estate, that's the big building over there, was sold. There was another Clark & Barlow store down in Wilmington that Joseph Sullivan Jr. took over. He messed that up. He got the trust sued over the dissolution of that particular store. In selling this real estate, he was pushing for an $8.4 million sales price, and Amy said, no, it's got to be $9 million. They were in front of a tiebreaker again. The tiebreaker went with Amy. So all of this shows that, no, he's not entitled to additional fees. Did she say yes twice? Yes, she did. But the third time when he unilaterally took $175,000, and again, that was after meeting with Brooke Pepe, the lady we're supposed to defer to, and Mr. Sullivan alone. Mr. Cronin, let me jump back to the main issue, which is the construction of the trust. I hate to come out of left field to you on this, but I'm going to do it anyway. If you just do a little research on this language, this is not unique language. It's in the Northern Trust 4. It's in two widely published treatises on trust law. And if you look at the annotations and the commentary on all of those three different, you know, exact, you know, provisions that carries in all these documents, all right, nowhere does it say, oh, by the way, this is the form you use if you want pro bono trustees. Well, the only thing I can tell you, and Judge Maker is the one that found the mentioned case, and I found that very curious. It was the unpublished case. It was the unpublished case, which is obviously not precedential, but you can use it for guidance. And in that case, you've got two brothers. One's a trustee and one's not. There was a corporation called Sunny Acres that was inside the trust. Like you said, this is the identical language. The identical language that Judge Maker was dealing with, that the trustee shall be reimbursed for reasonable expenses incurred in the management and protection of the trust, and any corporate trustee shall receive compensation for its services from time to time. That identical language was in the mentioned case. So now you tell me where it came from. I had someone in Kankakee County use the same form book as Ms. Pepe did up in Wilmette. And in that case, the third district approved and affirmed the trial court's logic and reasoning that's identical to Judge Maker's here, that since it is limited to corporate trustees, an individual trustee is not going to get compensated. Counsel, let me ask you this question. Sure. Go ahead. Yes, ma'am. Let's go back to paragraph G. Okay. I think the crux of all of this turns on that second phrase, which reads, any corporate trustee, as we've said all, shall receive compensation for its services in accordance with its schedule of fees in effect from time to time. Now, ordinary people who act as trust administrators usually don't have a schedule of fees. Isn't that right? That's right. So I think... You know what an ordinary person is supposed to do. Let's just assume we're talking about ordinary people. They usually don't have a schedule of fees. Couldn't one reasonable interpretation of that particular language mean that the corporate trustee would only be limited to using its schedule of fees, which means they can't charge something wildly different from what their schedule is or some exorbitant percentage? Why isn't that a reasonable interpretation of that? It could be assuming that ordinary person came in with a petition for fees that itemized its time and gave the court some idea of what a reasonable... That wasn't my question. I appreciate you telling me what you want to tell me, but I want you to answer the question I asked. And why isn't that a reasonable interpretation of that language? Because if you strictly construe this language, it says, any corporate trustee shall receive compensation. It doesn't say any individual trustee shall receive compensation. But by that same token, isn't there... Can you reasonably assume that if an individual other than a corporate trustee were to be excluded from receiving fees, that would have been in there as well? That's not in there. Nowhere in this language does it say only corporate trustees can receive fees and their fees shall be paid in accordance with their schedule. It doesn't say that. I agree with you. It really doesn't say that. And so you have to interpret what the language says. And a number of ways can... There are a number of ways to do that. And one of the ways is talking to the person who drafted it. And Ms. Pepe, this Ms. Pepe who drafted it, said that it was her understanding. She was pretty clear about the fact that the settlor intended the trustee to have fees, wasn't she? No. I disagree with her on that. She wasn't clear about that? No, she wasn't. She said the documents said that, and it's what's... And, again, I found out where the form book came from right now. That's what happened here. She used the form from the Northern Trust, and that language was in there. Was there any great thought into this by Ms. Pepe? There's no evidence of that, Judge. You're saying she... Her testimony was... Is it your statement that her testimony is that the settlor did not intend for the trustee to have fees? Her testimony, to my recollection, was that she encouraged everybody to seek fees because she thought they should be compensated. She definitely said that. And she also definitely said, and this is in Judge McPherson's ruling on the motion to reconsider, that Amy had to agree. She said, I even told Joe that if you want to take this fee, Amy has to agree. And there is no question, Amy did not agree. All right. And if Amy did not agree, does that mean that's the end of the story? Or is there, based on the record before us, is there another claim floating around for the judge to make to break the tie? I would say in order to break the tie, he's got to put forth, just like they indicated in the lynching case, he's got to put forth a fee petition that itemizes his hours, that breaks down the hours between what he did for Clark and Barlow, which is not incorporated, which is not a trust asset, and what he did for trust assets. He's got to come to a reasonable fee for his time, which is not an accountant, which is not a lawyer. And then the court can make its determination. But what about the phrase, trustees' regular compensation shall be charged against income during my lifetime, and thereafter half against income and half against principal, except that the trustee shall have full discretion at any time or times to charge a larger portion or all against income. Doesn't that contemplate that a trustee is going to get some compensation for his work? I believe that. It's our position, Your Honor, that a corporate trustee, yes. It could very easily have said a corporate trustee's regular compensation, but you're asking us to read into what's here the word corporate, and that language doesn't say that. You're asking us to read in the word individual, and the language doesn't say that either. It's just corporate. It's a trustee, and anybody can be a trustee, either an individual or a corporation. So why are you asking us to exclude an individual? That's what I'm trying to understand. I'm asking you, there is evidence in this record that is in the depositions and in the transcripts that both of the trustees promised their father before he passed away that they would not be taking a fee. That is in the record, and that combined with the language of this indicates that Joe Sr. did not intend for his kids to take compensation as a trustee's fee. Counsel, let me ask you. In this case, how did it occur where this gentleman took the fees? What was the notice to the other trustee? About two weeks. What was it? How was it noticed? Oh, my recollection is that Amy saw the money leave the account because they both had access to it. All right. And that was her first notice, and it happened at the end of the year in December. Boy, I don't remember the year. Okay, but again, as far as there's no photo, written notice of the money? No, there was a meeting. She had access to that account and saw on her own, which a good trustee should do, that money was removed from that. And expired. So then, at that point, couldn't she have taken this matter to court right away to find out if that was the case? We didn't want to. Honestly, she didn't want to sue her brother. She wants to. Well, who was the litigant? Well, she didn't have the litigants, but that's what took so long to get it in. She was found right away? She could have. Oh, absolutely. Sure. Yeah. But she didn't. She tried to get them to put the money back without suing him. So there was pre-trial or pre-suit settlement negotiations going on during the year or so before we initiated the litigation. Counselor, let me ask you this. Trustees are to account to the beneficiaries of the trust annually. Is that right? Yeah. Under the law? Yes. Are these trustees meant accounting annually to the beneficiaries? Oh, absolutely. More than annually. Both of them? Both of them. So no formal accountings filed? No, not formal accountings. But everybody has access. And at the end, even Joseph Sullivan Jr. testified in his deposition that at the end of the day, when John's medical expenses were taken care of, everybody was square. So my point is there's been no failure to disclose here. No. Absolutely none. Absolutely none. But at any point, I mean, honestly, what occurred when he took the $175,000 fee is he had a meeting with the lawyer around December 27th. He said, I want to take this. She said, you're entitled to a fee. Take this. He took the fee without asking Amy. Amy saw it in the bank account. She saw $175,000 come out to Joe, and she said, what the heck is this? And when was the money removed? What year was that? Oh, hang on. Well, the case is a 14- The first case was a 14-L. 12, I think. So it was 12. So since 2012, we've been arguing about this $175,000. Oh, absolutely. Yes. Yes. Can you tell me the value of this trust? Total? I know the real estate sold for $9 million. I mean, I just find it interesting. This litigation was going on for that long. Yep. Honestly, Judge, I wanted an arbitrator in the beginning, and that's why we filed the suit in front of Judge Mitchell. It was absolutely, obviously, it was litigated. And then we got it in front of Judge McFarland. I think the first, what really should have happened is if Sam Diamond was alive. Well, he wasn't. He wasn't. And again, before we anoint Ms. Pecky to the bench, let's remember, she didn't put in a successor arbitrator. Again, this isn't a greatly written document. Please wrap up, Mr. Daly. Again, I believe the strongest argument is, and we can go back and forth as to what a corporate trustee or an individual trustee is, the strongest argument is it took two. And there is no question of fact that nobody ever contested Judge McFarland's finding that Amy did not approve of this. And since she didn't approve of it, I put it to you that Judge McFarland was right, and she was right in ordering Mr. Sullivan to return the money together with the attorney's fees he unilaterally took out of the trust. And I ask you that you affirm her decision in all respects. Thank you very much.  A brief rebuttal, Mr. Feldman. Very briefly, Your Honor. Thank you for the time. Mr. Feldman, I submit to you, underscores so many of the factual issues here that we think at a minimum preclude summary judgment. For instance, whether Amy's fees that she took should have been classified as expenses or not. We've attached the entire checkbook as Exhibit B from our summary judgment motion that is in the appellate record, which shows all the checks that went not just to Amy herself but to the siblings. And then, of course, this underscores the fact that Mr. Fett says we never objected about approval. I disagree. Our whole thing about approval was this course of performance argument that there were two checkbooks. There's never two signature requirements. For years, these two trustees were writing these checks individually at all times. This was nothing new. There was certainly no failure to disclose. I think I heard Mr. Fett say that, yes, when Mr. Sullivan took the fee, he met with the lawyer. The lawyer said you're entitled to the fee. It was December 2012. She's the one who came up with the schedule of how the fees should have been done. All that's in the record, including Ms. Pepe's interpretation of the document. We've attached her deposition transcript as well in the supplemental record. We think, Your Honor, that the plain language of the document permits trustees to take fees. It's contemplated by that. A statute says as a mandatory statement that they shall take fees. The trust counsel interpreted it as fees are appropriate. And in previous iterations of fees, the co-trustee said take it. You deserve it. At no point did she say in that e-mail which we've attached, hey, fees are not allowed under this. You're not allowed to get fees. Only corporate trustees are fees. Nothing was like that in her statement for the two previous times they took it. We most respectfully ask you that we think our interpretation is correct and that some of the judgment really should have gone the other way, but at a minimum we ask that this case be remanded for further proceedings in the circuit court. Thank you, gentlemen, both of you, for a good argument. Thank you. Please call the next case.